Argued and submitted May 7, 2003, judgment modifying original dissolution judgment vacated and remanded for recalculation of child support; award of attorney fees in modification proceeding vacated and remanded; otherwise affirmed November 10, 2004

In the Matter of the Marriage of

Donald Lee ST. SAUVER,
*Appellant,*

*and*

Shirley Katrina ST. SAUVER,
*Respondent.*

15-00-24660; A117317

100 P3d 1076

Jeffrey E. Potter argued the cause for appellant. With him on the briefs was Gardner, Honsowetz, Potter, Budge & Ford.

Donna M. Matthews argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Haselton and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Husband appeals from a judgment that modified an original dissolution judgment by reallocating property between the parties and by increasing the award of child support to wife. He also appeals from a contempt judgment and from associated judgments for attorney fees. On *de novo* review, ORS 19.415(3) (2001),[1] we reinstate the original property award, vacate and remand the child support award for recalculation, affirm the contempt judgment, and vacate and remand one of the two attorney fee judgments.

The parties were married in 1994. The court entered a judgment in January 2001 that dissolved the parties' marriage. The dissolution judgment incorporated a marital settlement agreement (MSA) that both parties signed. The MSA was drafted by husband's counsel; wife had no legal representation. The judgment was taken by default.

At the time of dissolution, the parties had two children together, and wife had one child from a prior marriage. The marital assets included two homes, two cars, husband's PERS account, and miscellaneous personal property; liabilities included mortgages on both properties and various consumer debts. The original judgment awarded the parties joint custody of their children and awarded wife $630 per month in child support and certain personal property. The judgment required wife to transfer all interest in the two houses and the two cars to husband and required husband to

---

[1] The legislature amended ORS 19.415(3) in 2003. Or Laws 2003, ch 576, § 88 ("Upon an appeal from a [*decree*] **judgment** in a **case that constituted a** suit in equity **under common law,** the Court of Appeals shall try the cause anew upon the record." (Additions in boldface; deletions italicized in brackets.)). We need not decide whether the 2003 amendments to ORS 19.415(3) affect our standard of review because those amendments apply to the appeal of judgments that were entered on or after January 1, 2004. *See* Or Laws 2003, ch 576, § 90a ("The amendments to ORS * * * 19.415 * * * by sections 85 to 89 of this 2003 Act apply only to the appeal of judgments entered on or after the effective date of this 2003 Act. Any appeal of a judgment entered before the effective date of this 2003 Act shall continue to be governed by the law in effect on the day immediately preceding the effective date of this 2003 Act."). Based on the plain meaning of the text of Oregon Laws 2003, chapter 576, section 90a, we apply the 2001 version of ORS 19.415(3) in this case. *But see Kunze and Kunze,* 337 Or 122, 124, 92 P3d 100 (2004) (apparently citing the current version of ORS 19.415(3) in addressing a judgment that was entered before January 1, 2004).

hold wife harmless from any mortgages, taxes, and other debts associated with those assets. The judgment also awarded the PERS account to husband and required husband to pay wife's rent for a six-month period. No spousal support was awarded. Miscellaneous consumer debts were divided between the parties.

In July 2001, wife filed two motions for show cause orders. One sought modification of the dissolution judgment; the other sought an order finding husband in contempt for violating provisions of the dissolution judgment involving wife's conditional use of one of the vehicles and her right to reclaim personal property from the parties' former residence. The matter proceeded to trial, after which the court entered four judgments. A modification judgment awarded wife sole legal custody of the parties' children, but it maintained the equal parenting time awarded in the original judgment. It also increased child support to wife from $630 per month to $1,000 per month, awarded wife a one-half interest in the portion of husband's PERS account benefits that had accrued during the parties' marriage, and awarded wife one of the houses, subject to encumbrances. A contempt judgment awarded wife $1,000 for personal property that husband had refused to permit wife to reclaim and $6,000 for an automobile that husband had repossessed. The third and fourth judgments awarded wife attorney fees for the modification and contempt proceedings respectively.

In his first assignment of error, husband challenges the trial court's redistribution of assets, asserting first that the court had no authority to modify the original property division. Generally, a property division in a dissolution judgment is beyond the power of a court to modify. *E.g.*, *Spady v. Graves*, 307 Or 483, 488-89, 770 P2d 53 (1989); *Murray and Murray*, 120 Or App 216, 218, 852 P2d 204 (1993); *see also Prime v. Prime*, 172 Or 34, 49-50, 139 P2d 550 (1943) (articulating the same principle, in *dictum,* as a matter of common law). The statute that governs the modification of dissolution judgments, ORS 107.135, gives courts authority to modify property awards entered before October 23, 1999, that were based on a party's enhanced earning capacity, but that provision is inapplicable to this case.

Wife argues, however, that the MSA that was incorporated in the dissolution judgment gave the court the authority to modify the original property award. Paragraph 19 of the MSA provides, in part:

"19.   FULL DISCLOSURE

"19.1   Each party represents to each other:

"19.1.1   That each has disclosed to the other all assets and obligations of the parties or of either of them within the party's knowledge;

"19.1.2   That neither has interest whatsoever in any property or asset of any kind other than the assets listed in this agreement;

"19.1.3   That neither has unreasonably overstated or understated the value of any asset or the amount of any obligation; * * *

"* * * * *

"19.2   In the event either party fails to comply with the above, *the parties agree that the dissolution proceeding may be reopened by the court to alter the distribution of assets* and to modify any award of support and the non-complying party shall be required to pay the other party's attorney fees and costs incurred therein."

(Emphasis added; underscoring in original.) Wife maintains that husband ran afoul of that provision by providing inadequate and misleading disclosures about the value of certain assets. She contends, therefore, that the court had authority under the provision to modify the property award.

Husband responds that an MSA provision that is incorporated into a dissolution judgment cannot give a court authority to modify a property division that would not otherwise be subject to modification. He cites *Spady* as support for that proposition. The Supreme Court explained its holding in *Spady* as follows:

"ORS 107.135(1)(a), upon which [wife] relies, authorizes a circuit court to modify spousal and child support provisions, but it does not authorize modification of a property division incorporated in a dissolution decree. Although [the parties], as between themselves, could agree to modify the property

division (as they did), the circuit court did not have authority to modify the property division incorporated in the dissolution decree. * * * Thus, the circuit court, in modifying the property division of the original decree, acted beyond its authority; the parts of the modification order purporting to modify the property division of the original decree are void."

307 Or at 488-89 (citations omitted).

*Spady* is distinguishable from this case. *Spady* did not involve, and the Supreme Court did not address, the enforceability of a modification provision of an MSA that was incorporated into an original dissolution judgment. In *Spady*, the parties' agreement occurred *after* entry of the dissolution judgment. 307 Or at 486. The original judgment contained no provision, such as the one at issue here, that gave the court authority to modify the property distribution.

■    When an MSA is incorporated into a judgment, its provisions are generally given effect. *See, e.g.*, *McDonnal and McDonnal*, 293 Or 772, 652 P2d 1247 (1982) (approving modification of spousal support provisions in the absence of changed circumstances); *Eidlin and Eidlin*, 140 Or App 479, 916 P2d 338 (1996) (upholding unorthodox stipulation as to developments to be treated as changes in circumstances). The Supreme Court explained the rationale for that principle in *McDonnal*:

> "In cases where a support agreement has been incorporated into the decree in lieu of an evidentiary hearing and factual determination by the court the agreement itself is the court's only measure of the equities between the parties. The parties' own resolution of their dispute should be accorded great weight. * * * Where parties have foregone their opportunity to litigate disputes and have chosen instead to enter into an agreement their reliance on the agreement can be presumed. Inequity may result if this court adopts a policy of less than full enforcement of mutually agreed upon property and support agreements."

293 Or at 779.

■    That is not to say that the authority of the parties to fashion their own remedies and procedures in an MSA is

unlimited. MSA provisions that are incorporated into dissolution judgments cannot be enforced if they conflict with statutes or with compelling public policy. *E.g.*, *McDonnal*, 293 Or at 779; *Hearn and Hearn*, 128 Or App 259, 265, 875 P2d 508 (1994).[2]

Here, husband contends that section 19 of the parties' MSA cannot be enforced because it conflicts with the public policy favoring finality of property awards in dissolution judgments. Wife disputes that contention. We need not resolve the dispute, however, because, even if paragraph 19 could give the court authority to modify the property award that it made in the original judgment, we conclude that the trial court erred in finding that husband had breached the duties imposed in the paragraph. Hence, the court erred in relying on paragraph 19 to modify the original property award.

As relevant, paragraph 19 applies only when a party has "unreasonably overstated or understated the value of any asset or the amount of any obligation." Husband contends that he made no representations at all about the value of any of the assets and that, therefore, he could not have unreasonably overstated or understated their values.

According to husband, wife did not inquire as to the value of any of the assets. Husband testified that wife "didn't want a thing" and that he made no disclosures as to the value of any assets; he only disclosed that they existed. Wife does not specifically challenge that testimony. However, she testified about husband's PERS account that "I didn't know that I was entitled to anything from it. And [husband] told me that I wasn't entitled to anything."

The issue, then, is whether husband's statement that the PERS account had no value *to wife* constituted an understatement under paragraph 19 of the value of the asset. We conclude that it did not.

The language in paragraph 19, providing "[t]hat neither [party] has unreasonably overstated or understated the

---

[2] The principles embodied in *McDonnal* and *Hearn* were largely codified by the 2001 Legislative Assembly in ORS 107.104.

value of any asset," is unambiguous. It refers only to statements about the monetary value of assets. It does not refer to statements about whether a party has an interest in an asset. There is no evidence in the record to support a finding that husband overstated or understated the monetary value of any asset. Consequently, the court erred in finding that husband had breached any obligation under paragraph 19. It follows that it also erred in modifying the original property award.

■ Husband's second assignment of error concerns the requirement that husband file a satisfaction of a small claims judgment that he obtained against wife. Husband obtained the judgment after entry of the original dissolution judgment. He argues that, because the judgment was entered after the dissolution judgment, it is not a marital asset subject to division or modification in the dissolution proceeding. Wife claims that the subject of the small claims case was a credit card debt that the original dissolution judgment assigned to her. She characterizes the small claims judgment as an embodiment of that component of the prior property distribution, which should be subject to modification or satisfaction through exercise of the court's equitable powers.

Although wife did not mention the small claims judgment in her pleadings or testimony, her attorney raised the issue and asked the court to give wife relief from the judgment. Husband did not object to the request. We generally will not consider an error that was not raised in the trial court. ORAP 5.45(1).

Husband argues, however, that his failure to preserve the error should not be fatal in this instance because the order constitutes an error of law apparent on the face of the record. *See* ORAP 5.45(4)(b). We disagree. The small claims judgment can be considered to represent the credit card obligations that were allocated between the parties by the original dissolution judgment. Whether a court has equitable authority to order the satisfaction of such a small claims judgment under the circumstances of this case is unclear and, hence, is not subject to being addressed as plain error. Accordingly, we reject husband's second assignment of error.

■ In his third assignment of error, husband challenges the court's decision to modify child support. He argues that the court had no authority to modify child support in the absence of a demonstrated change in circumstances. Husband relies on ORS 107.135(3)(a) (2001), which provides:

> "In a proceeding under this section to reconsider the spousal or child support provisions of the [dissolution] decree, the following provisions apply:
>
> "(a)  A substantial change in economic circumstances of a party * * * is sufficient for the court to reconsider its order of support * * *."

Wife responds that the record supports the court's finding that there had been a substantial and unanticipated change in her economic circumstances. We agree with wife.

At the time of the dissolution, it was anticipated that wife would be able to maintain a stable residence and would have a car to use to help her establish an independent life. To promote those goals, the judgment required husband to pay wife's first six months of rent and to sell the 1993 Infiniti to her at an agreed price. As it turned out, wife was unable to afford to establish an independent residence, and husband wrongly repossessed the car. We agree with the trial court's finding that husband's actions left wife living under circumstances that the court described as equivalent to camping. The court did not err in concluding that wife's changed circumstances were substantial and unanticipated.

■ Husband argues, however, that, even if the trial court had authority to revisit the support provisions, it erred by attributing a full-time minimum wage income to wife in calculating child support. According to husband, the record shows that wife's actual income as a waitress was higher than the income that she would earn working full time at a minimum wage job.

Even though evidence presented at trial suggested that wife's night shifts allowed her to supplement her wages with tips, that evidence also suggested that the shifts interfered with her ability to help her children with homework and to transport them to school consistently and punctually. The court accordingly found that it was in the children's best

interest for wife to quit working night shifts as a waitress. As noted, the court also found that wife had been reduced to a state of camping. Relying on those findings, the court instructed the parties to enter wife's income as full-time minimum wage income when computing child support under the guidelines.

Even though the evidence as to the children's needs and mother's resources might have justified an upward departure from guideline child support, the trial court did not follow the proper procedure for making a departure. The guideline figure is to be calculated based on the parties' incomes. OAR 137-050-0330(1)(a). The presumption that the resulting figure is the appropriate child support figure is rebuttable. ORS 25.280; OAR 137-050-0330(2)(a) (2002). However, the court is not authorized to depart from the guideline amount before properly applying the formula:

> "If the child support presumption is rebutted * * *, a written finding or a specific finding on the record must be made that the amount is unjust or inappropriate. That finding must recite the amount that under the guidelines is presumed to be correct, and must include the reason why the order varies from the guidelines amount. A new support amount shall be calculated by determining an appropriate dollar value to be attributed to the specific criteria upon which the finding was based and by making an appropriate adjustment to the calculation."

OAR 137-050-0330(2)(b) (2002). The court did not follow that procedure. We therefore vacate the child support award and remand it to the court for recalculation in accordance with the procedures specified in the guidelines.

■ In his fourth assignment of error, husband contests the trial court's contempt findings and accompanying judgment. In the first of two findings of contempt, the trial court found that husband had willfully violated paragraph 11 of the incorporated MSA, which provided that "Wife shall be awarded as her sole and separate property * * * [a]ny and all personal property, household goods, furnishings, jewelry and other property currently in Wife's possession, which is not awarded to Husband above." The court entered a judgment

against husband for $1,000 for the value of personal property that he had not returned to wife.

Contesting that judgment, husband stresses the language of paragraph 29 in the MSA, which provides:

"Any property awarded to Wife remaining at the former marital residence located at 6828 Holly Street after 30 days following the entry of the Judgment and Decree of Dissolution of Marriage shall be forfeited by Wife and awarded to Husband. It is the agreement and intent of the parties that Wife will remove all property awarded to her within one month and it is up to Wife to make arrangements to store that property if she would like to keep it. If Wife leaves the property behind, it becomes Husband's property."

Husband maintains that he made the property available to wife and that she came to the premises and removed portions of it on several occasions. In accordance with paragraph 29, husband considered property that wife failed to claim after 30 days as his. He contends that he cannot be held in contempt for refusing to permit wife to reclaim that property because he acted in accordance with paragraph 29 in retaining it. Wife contends, however, that she relied on husband's verbal assurances waiving the 30-day requirement to reclaim her belongings (including family heirlooms), only to have him deny her right to possession when she attempted to claim the belongings after the 30-day period had expired.

■      Conduct punishable as contempt includes "the following acts, done willfully: * * * [d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments." ORS 33.015(2)(b). The essential elements for a contempt judgment are "(1) a valid court order; (2) knowledge of the order by the contemnor; and (3) the contemnor's voluntary noncompliance with the order." *Clark and Clark*, 171 Or App 205, 209, 14 P3d 667 (2000) (quotation marks omitted); *see also State ex rel Oregon State Bar v. Wright*, 280 Or 713, 715, 573 P2d 294 (1977) (requiring that offense be willful and with bad intent).

Here, neither the validity of the court's judgment nor husband's knowledge of it are in dispute. The argument centers on whether husband willfully disobeyed, resisted, or obstructed the judgment. The court found that husband

intentionally misled wife so that she would rely on his assurances to her detriment. According to the court, husband "led [wife] to believe that [the time limit for recovery of personal property] really wasn't a problem, and then at some point he acted on it. * * * [T]o me it's evidence of his intention and willfulness in the way he conducted himself." Wife's mother testified that husband informed her before the end of the 30-day removal period that the personal belongings could be removed at any time before or after that period. She also testified that husband later said, "I want [wife] destroyed. I don't want her to succeed."

The express intention of the original dissolution judgment was that wife should receive her personal belongings. If husband, with the intent of keeping those belongings, misled wife into believing that she would be allowed to retrieve them after the agreed retrieval period, his conduct constituted resistance to and obstruction of the court's judgment and provided sufficient grounds for a finding of contempt. We therefore reject the described aspect of husband's fourth assignment of error.

■   In a second finding of contempt, the court concluded that husband willfully violated paragraph 12 of the incorporated MSA, which provides:

> "12.1   The parties represent that Husband is the title holder for a 1993 Infinit[i], financed through Pacific Cascade Credit Union. This asset shall, upon entry of the Judgment and Decree of Dissolution of Marriage, be awarded to Husband as his sole and separate property, free and clear of any claim from Wife. * * *

> "12.2   The parties agree that if wife makes timely payments, never falling more than 30 days in arrears, and if Wife maintains full insurance coverage, as soon as the outstanding obligation due is paid in full, Wife will be awarded the ownership interest in the vehicle.

> "* * * * *

> "12.4   * * * Husband agrees to allow Wife to use the vehicle until the outstanding obligation is paid in full, for so long as the payments are timely made, insurance is maintained and Wife does not allow any depreciation beyond ordinary wear and tear."

Husband argues that, because wife allowed the insurance for the car to lapse, was behind in her car payments, and had not changed the oil in the car for 11,000 miles, he was justified in repossessing the car.

The court found that those claims were not made in good faith, concluding that husband's conduct regarding the car was "essentially a setup, a way to help strip her both of her mobility and her dignity." Again, there is evidence in the record to support the court's findings. Exhibits and testimony suggest that wife was tendering money to husband on a monthly basis for car payments and insurance up through the time that husband repossessed the car. Testimony indicated that husband was collecting a variety of bill payments from wife and allocating them toward her different obligations at his discretion. Testimony also indicated that the car was taken while wife was on vacation and that husband gave little or no notice that wife was at immediate risk of losing the car. The court could have found that, if wife was behind in her automobile payments, it was because husband arranged that she should be so. That conduct constitutes resistance to or obstruction of the court's judgment and was sufficient to support the contempt judgment.

■ Husband also objects that the $6,000 judgment awarded to wife in connection with the contempt exceeded her requested relief. *See* UTCR 19.020(2) (prohibiting the court from imposing a contempt sanction greater than the sanction sought). In her show cause order, wife asked for possession of the vehicle. The court found that, because husband had sold the vehicle after repossessing it from wife, an order to restore possession was impractical. Husband testified that the parties had purchased the vehicle for approximately $10,000. In estimating the car's value at $6,000 and ordering payment for it, the court acted within its equitable authority. *See Fitzgerald and Fitzgerald*, 70 Or App 625, 627-28, 690 P2d 1114 (1984). We accordingly reject this portion of husband's fourth assignment of error.

■ ■ In his fifth assignment of error, husband challenges the award of attorney fees to wife in connection with the modification judgment. Husband argues that wife did not adequately plead the factual and statutory bases for the fees, as

required by ORCP 68 C(2)(a), and that husband's ability to frame a response to the claim was substantially affected by the pleading failure. He also argues that the court awarded an excessive fee. We review a party's entitlement to attorney fees for legal error. *Stevens v. Foren*, 154 Or App 52, 60, 959 P2d 1008, *rev den*, 327 Or 554 (1998). We review a challenge to the amount of fees for abuse of discretion. ORS 20.075(3).

■ Wife included a request for attorney fees in her show cause motion. Paragraph 19.2 of the MSA provides:

> "In the event either party fails to comply with the above, the parties agree that the dissolution proceeding may be reopened by the court to alter the distribution of assets and to modify any award of support and the non-complying party shall be required to pay the other party's attorney fees and costs incurred therein."

The accompanying affidavit provided that,

> "according to § 19.2 [of the incorporated MSA,] I ask that the dissolution proceeding 'be reopened by the court to alter the distribution of assets and to modify any award of support' and that petitioner as the noncomplying party be required to pay my attorney fees and costs incurred therein."

We conclude that wife adequately alleged her claim to attorney fees by citing the provision of the agreement that provides for such fees. As noted above, ORS 107.104(2) (2001) provides that,

> "[i]n a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated decree signed by the parties * * * or a decree incorporating a marital settlement agreement:
>
> "(a)  As contract terms using contract remedies * * *."

ORS 107.135(8) provides similar authority in the context of modification proceedings. Although wife and the trial court appear to have been inconsistent in their citations of authority for an award of attorney fees, that inconsistency does not affect the outcome here. Misidentification of the proper attorney fee provision will be treated as harmless error when the facts asserted provide a basis for attorney fees and the affected party is given adequate notice that fees will be

sought. *See Page and Page*, 103 Or App 431, 433-34, 797 P2d 408 (1990). That principle applies here.

We nevertheless vacate the judgment that awarded wife attorney fees for work related to the modification of the original dissolution judgment. We do so because we have vacated the modification judgment and remanded the matter to the trial court for it to recalculate the child support award. We therefore remand the attorney fee award for reconsideration in light of those changes. In making any award of attorney fees on remand, the court should make appropriate findings.

In his sixth and final assignment of error, husband contests the award of attorney fees to wife on the contempt judgments. He complains again that the statutory basis for the fee was not adequately alleged and that the amount awarded was excessive. Wife provided notice of her intent to recover attorney fees in her motion and order to show cause. Both ORS 33.105(1)(e) and ORS 107.445 entitle the prevailing party in a contempt proceeding in a dissolution action to recover attorney fees. We reject husband's sixth assignment of error without further discussion.

Judgment modifying original dissolution judgment vacated and remanded for recalculation of child support; award of attorney fees in modification proceeding vacated and remanded; otherwise affirmed.